# In the United States Court of Federal Claims

|  |  |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF KANSAS CITY WELFARE BENEFIT PLAN, *et al.*, | Nos. 23-cv-641, 23-cv-642, 23-cv-643, 23-cv-644, 23-cv-645, 23-cv-647, 23-cv-648, 23-cv-650, 23-cv-651, 23-cv-1455, 23-cv-1491, 23-cv-1282 |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES, | Filed: August 9, 2024 |
| Defendant. | |

*Charles Baek* of Crowell & Moring LLC, Washington, DC and *Michael J. Korda* of Kraw Law Group, APC, Mountain View, California argued for Plaintiffs. With *Charles Baek* on the briefs were *Stephen J. McBrady, Payal Nanavati*, and *Issac D. Schabes* of Crowell & Moring LLP, Washington, DC. With *Michael J. Korda*, arguing for Plaintiffs *Board of Trustees of the Carpenter Health and Welfare Trust Fund for California et al.*, were *George A. Kraw*, *Katherine A. McDonough*, and *Jessica M. Alvarez* of Kraw Law Group, APC, Mountain View, California.

*Borislav Kushnir*, United States Department of Justice, Civil Division, Washington, DC argued for Defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Washington, DC; *Patricia M. McCarthy*, Director, Commercial Litigation, Washington, DC; *Eric P. Bruskin*, Assistant Director, Commercial Litigation, Washington, DC; *Kenneth Whitley* and *Robert Balderston*, United States Department of Health and Human Services.

## MEMORANDUM AND ORDER

This case arises out of the Department of Health and Human Services' (HHS's) implementation of the Patient Protection and Affordable Care Act of 2010 and subsequent litigation before this Court in *Electrical Welfare Trust Fund v. United States*, 155 Fed. Cl. 169 (2021) (*EWTF*). Plaintiffs, alleged self-administered, self-insured health plans, filed actions between May and August 2023 to recover amounts paid to Defendant under HHS's former unlawful interpretation and application of section 1341 of the ACA. *See* 42 U.S.C. § 18061. As reflected in this Court's prior opinions in *EWTF*, HHS ignored the plain language of section 1341

in requiring self-administered, self-insured health plans to make TRP contributions for the 2014 benefit year. *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 183–84. However, none of the Plaintiffs in this action opted in to the *EWTF* class action. At issue in this case is whether Plaintiffs timely filed their actions within the applicable six-year statute of limitations. Defendant contends that Plaintiffs' claims fall outside the statute of limitations and, accordingly, that this Court lacks subject matter jurisdiction. In contrast, Plaintiffs contend that this Court has jurisdiction because equitable tolling saves their otherwise untimely claims from dismissal.

Pending before this Court is Defendant's (Defendant's or Government's) Motion to Dismiss for lack of subject matter jurisdiction (Motion). ECF No. 8 (Def. Mot. Dismiss).[1] Defendant urges the Court to dismiss this consolidated action pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (Rules), citing the Court's six-year statute of limitations.[2] *Id.* at 6; *see* 28 U.S.C. § 2501. The Motion is fully briefed, and this Court conducted Oral Argument on January 31, 2024. The Court subsequently ordered supplemental briefing, which the parties completed on March 29, 2024. ECF Nos. 30, 31, 32, 33. Additionally, the parties filed additional notices and responses concerning supplemental authority published after the conclusion of briefing. ECF Nos. 34, 35, 36.

---

[1] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

[2] Following the filing of Government's Motion to Dismiss, three additional actions were consolidated under the lead case *Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan*, 23-cv-641 (Blue Cross Blue Shield or BCBS). On agreement of the parties, the Government's pending Motion also applies to these four plaintiffs: *Aetna Inc. Med. Dental Benefit Plan v. United States*, No. 23-cv-1455 (ECF No. 7) (Joint Status Report and Consent Motion for Consolidation) at 2; *Health Care Serv. Corp. Master Flexible Benefit Plan v. United States*, No. 23-cv-1491 (ECF No. 7) (Joint Status Report and Consent Motion for Consolidation) at 2; *Board of Trustees of the Carpenters Health & Welfare Tr. Fund for Cal. Et al. v. United States*, No. 23-cv-1282 (ECF No. 12) (Joint Status Report) at 2; *see also* Defendant's Reply in Support of its Motion to Dismiss (ECF No. 19) (Def. Reply) at 7 n.2.

Having considered the parties' briefs, arguments, and applicable law, this Court holds that Plaintiffs failed to timely file their actions, and consequently, that this Court lacks subject matter jurisdiction over their claims.  Accordingly, this Court **GRANTS** the Government's Motion to Dismiss (ECF No. 8) pursuant to Rule 12(b)(1) and dismisses this action pursuant to Rule 12(h)(3).

## **BACKGROUND**

### I.    **Transitional Reinsurance Program**

In 2010, Congress passed and President Obama signed into law the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), as amended by Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively the ACA).[3]  The goal of the ACA was to extend healthcare coverage throughout the United States. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 301 (2020).  The ACA requires all individuals to maintain "minimum essential" health insurance coverage, 26 U.S.C. § 5000A, and forbids health insurance providers from discriminating against individuals with pre-existing medical conditions by denying them coverage, 42 U.S.C. § 300gg-3.  Accordingly, "Congress anticipated that the enrollment of a disproportionate number of previously uninsured, high-risk individuals into the health insurance market could cause premiums to rise for all insured individuals." *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 175 (citing *King v. Burwell*, 576 U.S. 473, 479–81 (2015)).  Seeking to diminish the increased financial risk for health insurance insurers covering high-risk individuals, Congress created certain risk-mitigation programs.  *Me. Cmty. Health Options*, 590 U.S. at 301–02.

At issue here is one particular risk-mitigation program, the Transitional Reinsurance Program (TRP), "intended to stabilize premiums for coverage in the individual health insurance

---

[3] This Court previously discussed the ACA's Transitional Reinsurance Program (TRP) at length in *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 175–80.

market during the early years of the ACA's implementation—2014, 2015, and 2016." *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 175–76 (citing 42 U.S.C. § 18061(c)(1)(A)).  To fund the TRP, the ACA required each state to establish a program under which "health insurance issuers, and third party administrators on behalf of group health plans" pay into the appropriate reinsurance pool, whether state or federal, for the three-year period beginning January 1, 2014.  42 U.S.C. § 18061(b)(1)(A).  The funds collected from the contributing entities were used to reimburse "health insurance issuers" for enrolling high-risk individuals in the individual marketplace.  42 U.S.C. § 18061(b)(1)(B).

The statutory language of the ACA directed HHS to promulgate regulations pertaining to TRP contributions.  *See* 42 U.S.C. § 18061(b).  HHS initially determined that contributors to the TRP included all self-insured group health plans and thus promulgated a regulation that required all self-administered, self-insured health plans (including purportedly, Plaintiffs) to make contributions to the TRP.  HHS Notice of Benefit and Payment Parameters for 2014, 78 Fed. Reg. 15,410, 15,525 (Mar. 11, 2013) (2013 Final Rule) (defining "contributing entity").  Although self-administered, self-insured health plans were required under HHS regulations to contribute to the TRP, self-administered, self-insured health plans were not included in those eligible to receive any contributions in the TRP program itself and were therefore unable to benefit from the TRP's risk mitigation purpose.  *See Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 178.

In December 2013, HHS issued a Proposed Rule to modify the definition of "contributing entity" to exclude self-administered, self-insured health plans for the 2015 and 2016 plan years.  HHS Notice of Benefit and Payment Parameters for 2015 (Proposed Rule), 78 Fed. Reg. 72,322, 72,340 (Dec. 2, 2013).  In March 2014, HHS adopted this new interpretation as "the better reading of section 1341," determining "that a self-insured, self-administered plan should not be a

contributing entity." HHS Notice of Benefit and Payment Parameters for 2015, 79 Fed. Reg. 13,744, 13,773 (Mar. 11, 2014) (2014 Final Rule). The practical result of this modification was to exclude self-administered, self-insured health plans from TRP contributions for the 2015 and 2016 benefit years; HHS, however, did not apply the new definition to the 2014 benefit year. Instead, citing administrative difficulties with reversing course "at this late stage," HHS collected 2014 TRP contributions from self-administered, self-insured health plans anyway, contrary to both the plain language of the statute and its own interpretation of the statute. *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 179 (quoting 2014 Final Rule at A4703) ("[In its Final Rule,] HHS justified its definitional distinguishment for the 2014 plan year by reasoning that 'making the proposed exemption effective for the 2014 benefit year at this late stage would be disruptive to plans and issuers that have already set contribution rates and premiums and could upset settled estimates with respect to expected reinsurance payments and contribution obligations.'").

II.    **Plaintiffs' Contributions to the Transitional Reinsurance Program**

Defendant required self-administered, self-insured health plans to pay a contribution of $63 per covered life for the 2014 benefit year—an amount that included both plan participants and their dependents. BCBS Compl. at 9 n.7 (citation omitted) ("For the 2014 benefit year, HHS offered contributing entities the option to pay: (1) the entire 2014 benefit year contribution in one payment no later than January 15, 2015 reflecting $63.00 per covered life; or (2) in two separate payments for the 2014 benefit year, with the first remittance due by January 15, 2015 reflecting $52.50 per covered life, and the second remittance due by November 15, 2015 reflecting $10.50 per covered life."); *see also Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 180. To remit payment, Defendant required: "(1) the contributing entity [] to submit an annual enrollment count of the number of covered lives of reinsurance contribution enrollees no later than November 15 of the

applicable benefit year; (2) after submitting the annual enrollment count, HHS then notified the contributing entity of the amount of the reinsurance contribution allocated to reinsurance payments, administrative expenses, and the United States Treasury for the applicable benefit year; and (3) the contributing entity remitted reinsurance contributions to HHS." *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 180 (citing 45 C.F.R. § 153.405).

Specifically, in this action, Plaintiffs allege they remitted TRP contributions to Defendant on the following dates:

| Plaintiff | Date of TRP Payment(s) |
|---|---|
| Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan | December 30, 2014 |
| Louisiana Health Service & Indemnity Company Welfare Benefit Plan | November 13, 2024 |
| Hospital and Medical Plan for BlueCross BlueShield of South Carolina | December 29, 2014 (first payment) and November 12, 2015 (second payment) |
| The CareFirst Flexible Benefits Plan | December 30, 2014 (first payment) and September 14, 2015 (second payment) |
| Cook Group Health Plan | November 21, 2014 |
| Lester E. Cox Medical Center Welfare Benefit Group Insurance Plan | November 11, 2014 |
| Humana Benefit Plans | November 14, 2014 (first payment), December 23, 2014 (second payment), and November 12, 2015 (third payment) |
| Hyatt Corporation Welfare Plan | January 15, 2015 |
| UnitedHealth Group Employee Health Benefit Plan | January 15, 2015 (first payment) and November 13, 2015 (second payment) |
| Health Care Service Corporation Master Flexible Benefit Plan *et al.* | December 17, 2014 (first payment) and August 11, 2015 (second payment) |
| Aetna Inc. Medical Dental Benefit Plan | December 31, 2014 (first payment) and September 4, 2015 (second payment) |

| | |
|---|---|
| The Board of Trustees of the Carpenter Health and Welfare Trust Fund for California *et al.* | January 9, 2015 (first payment) and November 6, 2015 (second payment) |

*See* Plaintiffs' Notice, dated February 15, 2024 (ECF No. 27) (Table A) at 1–2.

### III.   *Electrical Welfare Trust Fund v. United States*

The facts outlined above prompted the filing of *EWTF* before this Court.[4]   *EWTF* has a

lengthy history and only facts relevant to the present action are included here.  *See, e.g.*, *Elec.*

*Welfare Tr. Fund*, 155 Fed. Cl. at 169; *Elec. Welfare Tr. Fund v. United States*, 166 Fed. Cl. 709

(2023); *Elec. Welfare Tr. Fund v. United States*, 171 Fed. Cl. 362 (2024).

On March 8, 2019, self-insured group health plan plaintiffs filed a putative class action.

*See generally Elec. Welfare Tr. Fund*, No. 19-cv-353, Complaint (ECF No. 1) (*EWTF* Compl.);

Second Amended Class Action Complaint (ECF No. 59) ¶¶ 101–27.[5]  Plaintiff *EWTF* was a self-

administered, self-insured health plan during the relevant time period and filed an action to recoup

the TRP contributions made under the ACA for the 2014 benefit year that HHS had refused to

refund, despite its changed interpretation of section 1341.  *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at

---

[4] EWTF also filed prior suits in the Court of Federal Claims and other courts, all of which were dismissed.  *See Elec. Welfare Tr. Fund v. United States*, No. 16-2186, 2017 WL 3116693, *2, *7 (D. Md. July 21, 2017), *aff'd*, 907 F.3d 165, 168–70 (4th Cir. 2018) (dismissing suit for lack of jurisdiction); *Operating Eng'rs Tr. Fund of Washington, D.C., et al. v. United States*, No. 17-cv-1732, ECF Nos. 1, 29 (EWTF, Stone Masons, and OETF filed suit in the United States Court of Federal Claims but thereafter the parties filed a stipulation of dismissal without prejudice pursuant to Rule 41(a)(1)(A)(ii)).  *See also Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 181.

[5] Plaintiffs Operating Engineers Trust Fund of Washington, D.C. (OETF) and Stone & Marble Masons of Metropolitan Washington, D.C. Health and Welfare Fund (Stone Masons) also filed suit.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, Compl.  However, the Court granted Defendant's Motion to Dismiss as related to OETF's and Stone Mason's illegal exaction claims.  *See Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 193.  Plaintiffs OETF and Stone Masons separately continued to pursue their Fifth Amendment Takings claims, which this Court dismissed on July 7, 2023.  *Elec. Welfare Tr. Fund*, 166 Fed. Cl. at 723.  Plaintiffs OETF and Stone Masons' Takings claims remain on appeal to the U.S. Court of Appeals for the Federal Circuit.

175, 181.   EWTF asserted its contributions amounted to an illegal exaction under the Fifth Amendment's Due Process Clause and a taking of property without just compensation under the Fifth Amendment's Takings Clause.   *EWTF* Compl. ¶¶ 89–111.

On May 7, 2019, Defendant moved to dismiss the *EWTF* plaintiffs' complaint for lack of jurisdiction and for failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6), and alternatively moved for summary judgment pursuant to Rule 56.   *See Elec. Welfare Tr. Fund*, No. 19-cv-353, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 6).   On July 30, 2021, the Court denied Defendant's motion as it related to EWTF's illegal exaction claim, finding that under the plain text of the ACA HHS lacked authority to collect TRP contributions for the 2014 benefit year from self-insured group health plans that did not use a third-party administrator.   *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 181–84.   The Court came to the opposite conclusion for third-party administrator plaintiffs alleging illegal exaction and granted the Government's motion to dismiss the illegal exaction claims as it related to such entities.   *Id*. at 188.

On April 8, 2022, EWTF moved to certify a class of entities eligible to recover under plaintiffs' illegal exaction claims, which this Court granted on June 22, 2022.   *See Elec. Welfare Tr. Fund*, No. 19-cv-353, Plaintiff EWTF's Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (ECF No. 53); *Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462, 465 (2022).   In granting plaintiff's motion, the Court certified the following class:

> All self-administered, self-insured employee health and welfare benefit plans that are or were subject to the assessment and collection of the Transitional Reinsurance Contribution under Section 1341 of the Affordable Care Act for benefit year 2014 (the "Exaction Class" or "Class").

*Id.* at 470.   Following class certification, Class Counsel sent Notice to approximately 650 plans

identified by Government records as potential self-administered, self-insured putative members of the Exaction Class. *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order Directing Entry of Judgment Pursuant to Rule 54(b) (ECF No. 123) (*EWTF* Order Directing 54(b) Judgment) at 2 (citing ECF Nos. 111, 92, 87-1).  The deadline for class members to opt into the Exaction Class was December 19, 2022.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order, dated November 11, 2022 (ECF No. 92) (November 11, 2022 Order) at 5.[6]

On December 21, 2022, the Court granted EWTF's motion for summary judgment with respect to the Exaction Class's claims and stated its intent to direct entry of Judgment pursuant to Rule 54(b).  *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order, dated December 21, 2022 (ECF No. 97) at 1.

On February 2, 2023, class plaintiffs filed their initial Certification of Final Membership in the Exaction Class, and on February 10, 2023, class plaintiffs filed an unopposed Supplemented Certification of Final Membership in the Exaction Class.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, ECF Nos. 106, 111; *see also Elec. Welfare Tr. Fund*, No. 19-cv-353, November 11, 2022 Order at 5 (directing Class Counsel to "certify final membership in the Exaction Class by identifying the name of each member of the Exaction Class to the Court and providing, to the Court and Defendant, a copy of the opt-in form completed by each Exaction Class member and submitted to Class Counsel").

On May 12, 2023, the Court directed the Clerk of Court to enter partial Judgment pursuant to Rule 54(b) in favor of the Exaction Class in the total amount of $185,230,024.42, or 100% of the Exaction Class's damages.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, *EWTF* Order Directing 54(b) Judgment at 4; *see also Elec. Welfare Tr. Fund*, No. 19-cv-353, Exhibit A to Supplemented

---

[6] This deadline was extended from November 14, 2022, which the Court originally set in its July 27, 2022 Order.  *Elec. Welfare Tr. Fund*, No. 19-cv-353 (ECF No. 77).

Certification of Final Membership in the Exaction Class (ECF No. 111-1) (Final Certification List) (listing each Class Member and their respective distribution of damages).  In total, class counsel identified—and the Court accepted—357 self-administered, self-insured health plans group health plans that opted in as part of the class, none of which include the Plaintiffs now before the Court. *See* Final Certification List.

On June 26, 2023, Defendant filed a Notice of Appeal of the Court's 54(b) Judgment in favor of the Exaction Class.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, Defendant's Notice of Appeal (ECF No. 128); *Elec. Welfare Tr. Fund*, No. 19-cv-353, Rule 54(b) Judgment (ECF No. 124). Subsequently, the parties engaged in settlement discussions and resolved all claims brought by the Exaction Class.  *See Elec. Welfare Tr. Fund*, No. 19-cv-353, Motion for Final Approval of Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144) at 11.  Accordingly, on December 20, 2023, the United States Court of Appeals for the Federal Circuit remanded the action to this Court for finalization of the parties' settlement agreement. *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order, dated December 20, 2023 (ECF No. 138) at 2.

On February 16, 2024, Class Representative EWTF filed an Unopposed Motion for Preliminary Approval of Settlement and Authorization to Disseminate Notice of Settlement.  *Elec. Welfare Tr. Fund*, No. 19-cv-353, ECF No. 142; *Elec. Welfare Tr. Fund*, No. 19-cv-353, Proposed Settlement Agreement, dated February 16, 2024 (ECF No. 142-1) (*EWTF* Proposed Settlement Agreement).  On February 21, 2024, the Court preliminarily approved the proposed Settlement Agreement that awarded 91.25% of the Exaction Class's recoverable damages, or $169,022,397.28, as "fair, reasonable, and adequate and in the best interest of the Settlement Class." *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order, dated February 21, 2024 (ECF No. 143)

(*EWTF* February 21, 2024 Order) at 1; Proposed Settlement Agreement at 4.[7]

On March 27, 2024, Class Representative EWTF filed a Motion for Final Approval of the Settlement and Plan for Allocating Net Settlement Fund to Exaction Class Members (ECF No. 144), and Class Counsel filed a Motion for an Award of Attorneys' Fees, Expenses, and Case Contribution Award to Class Representative (ECF No. 145). *Elec. Welfare Tr. Fund*, No. 19-cv-353. On May 1, 2024, following the proper notice period, this Court conducted a public Fairness Hearing, at which no member of the Exaction Class or otherwise sought to participate. *See Elec. Welfare Tr. Fund*, No. 19-cv-353, February 21, 2024 Order at 2. Further, no member of the Exaction Class – or any other person or entity – lodged an objection to the Exaction Class Settlement Agreement. *Elec. Welfare Tr. Fund*, 171 Fed. Cl. at 374. The Plaintiffs in the present case neither opted into the Exaction Class nor objected to the Settlement Agreement.

On May 16, 2024, this Court issued a fulsome Memorandum and Order granting Class Representative EWTF's Motion for Final Approval of Settlement and Class Counsel's Motion for Attorney Fees, Expenses, and a Case Contribution Award. *Id.* at 392.

## IV.   Post-*Electrical Welfare Trust Fund* Developments

### A.   Plaintiffs' First Actions

Between February 3, 2023 and March 10, 2023 – several months before the Court entered its initial May 12, 2023 Judgment in *EWTF* – various plaintiff employers, which sponsor ten of the group health plans involved as Plaintiffs in the present action, filed nine separate actions.[8] *See*

---

[7] The Settlement Agreement amount of $169,022,397.28 is inclusive of all damages, attorneys' fees and out of pocket expenses, and all administrative fees and costs. *EWTF* February 21, 2024 Order at 1; *see also* Proposed Settlement Agreement at 4.

[8] *See Louisiana Health Service & Indemnity Company v. United States*, No. 23-cv-152; *Blue Cross and Blue Shield of South Carolina v. United States*, No. 23-cv-156; *CareFirst, Inc. v. United States*, No. 23-cv-157; *Cook Group, Inc. v. United States*, No. 23-cv-158; *Lester E. Cox Medical Centers v. United States*, No. 23-cv-159; *UnitedHealth Group Incorporated v. United States*, No.

Consolidation Order, dated May 15, 2023 (ECF No. 7); *see also Elec. Welfare Tr. Fund*, No. 19-cv-353, Rule 54(b) Judgment (ECF No. 124).

On April 19, 2023, this Court held a status conference in eight of the referenced cases,[9] during which Plaintiffs' counsel discussed potential plans to voluntarily dismiss and refile each case due to potential standing concerns raised by the Government.[10]  *Louisiana Health Service*, No. 23-cv-152, Transcript of Status Conference, dated April 19, 2023 (ECF No. 16) (April 19, 2023 Tr.) at 8:15–9:1, 9:18–10:9; *Louisiana Health Service*, No. 23-cv-152, Joint Status Report (ECF No. 11) at 3.  At the conference, the Court also asked Plaintiffs' counsel whether the Court should consolidate the present or potential re-filed cases.   April 19, 2023 Tr. at 4:12–14. Seemingly misinterpreting the Court's question to reference the ongoing *EWTF* class action, Plaintiffs' counsel instead referenced *EWTF* in his response, noting:

> In our view, each of the individual Plaintiffs who has filed their own case should have the ability to control their own case and that includes potentially participating in appeals in the case independently from the class action and from one another. That includes the potential to sit[] in settlement discussions independently of one another in the class action.  And we think there is good precedent for this, Your Honor.  This is the third large class action related to the Affordable Care Act . . . We were involved representing the individual Plaintiffs in each of those cases . . . [and], individual Plaintiffs played a very significant role on appeals at both the Federal Circuit and the Supreme Court and we think there's a significant value add to companies affirmatively electing not to opt in to a class action to be able to control their own destiny and litigation.

---

23-cv-160; *Humana Inc. v. United States*, No. 23-cv-209; *Hyatt Corporation v. United States*, No. 23-cv-222; *Blue Cross and Blue Shield of Kansas City v. United States*, No. 23-cv-351.

[9] *Hyatt Corporation v. United States*, No. 23-cv-222, was transferred to the undersigned Judge on April 19, 2023, following the conclusion of the status conference.  *See Hyatt Corporation*, No. 23-cv-222, Order (ECF No. 6).

[10] The Government contended that the employers lacked standing to pursue an illegal exaction claim because the employers themselves did not make contributions into the TRP.  April 19, 2023 Tr. at 8:15–25, 9:18–25, 10:1–9; *Louisiana Health Service*, No. 23-cv-152, Joint Status Report (ECF No. 11) at 3.

*Id.* at 4:20–5:13.  Plaintiffs' counsel of record also indicated that "most" Plaintiffs had received

notice of *EWTF's* class action.  *Id.* at 7:20–21 ("I believe that most of our clients did receive the

class action notice.").

On May 3, 2023, the parties in each of the nine actions timely filed Joint Status Reports.

*See, e.g.*, *Louisiana Health Service*, No. 23-cv-152, Joint Status Report (ECF No. 13).  In their

filings, each Plaintiff stated that "a new directly related case [will be filed] today" and indicated

the parties' joint support for consolidating the nine newly filed cases.  *See, e.g.*, *id.* at 1.

Subsequently, the plaintiff employers of the group health plans voluntarily dismissed their actions.

*See, e.g*., *Louisiana Health Service*, No. 23-cv-15, Notice of Voluntary Dismissal without

prejudice, dated May 3, 2023 (ECF No. 14).

### B.  Plaintiffs' Present Complaints

On May 3, 2023, ten group health plans, identifying themselves as self-administered, self-

insured health plans, filed nine actions in this Court alleging illegal exaction claims based on

contributions they had paid into to the TRP for the 2014 benefit year.  *See e.g.*, BCBS Complaint

(ECF No. 1) (Compl.) ¶ 35.[11]  Thereafter, in August 2023, five additional plaintiffs filed related

actions in this Court.[12]  To date, the Court has consolidated twelve (12) cases representing fifteen

---

[11] Where Plaintiffs' factual and legal allegations are largely indistinguishable, the Court cites to
the lead case, *Blue Cross Blue Shield*, 23-cv-641.

[12] *See Health Care Serv. Corp. Master Flexible Benefit Plan et al. v. United States,* No. 23-cv-
1491; *Aetna Inc. Med. Dental Benefit Plan v. United States*, No. 23-cv-1455; *Board of Trustees of
the Carpenters Health and Welfare Tr. Fund for Cal., et al. v. United States*, No. 23-cv-1282.
After filing suit, the Plaintiffs in *Health Care Serv. Corp. Master Flexible Benefit Plan et al.* and
*Aetna Inc. Med. Dental Benefit Plan*, represented by the same Plaintiffs' attorney as the original
filing plaintiffs, filed consent motions for consolidation, providing that "[o]nce consolidated, the
pending motion to dismiss in the consolidated case (No. 23-641) will apply to this case as well."
*Aetna* JSR at 2; *Health Care Serv. Corp.* JSR at 1–2.  These cases were consolidated with the
present lead case on September 8, 2023.  *Aetna Inc. Med. Dental Benefit Plan* (Consolidation
Order) (ECF No. 8); *Health Care Serv. Corp. Master Flexible Benefit Plan et al*. (Consolidation
Order) (ECF No. 8).  *Board of Trustees of the Carpenters Health and Welfare Trust Fund for*

(15) Plaintiffs with *Blue Cross Blue Shield*, 23-cv-641 designated as the lead case. *See* Def. Reply at 7 n.2; *see also generally* Scheduling Order (ECF No. 17).

### C.  Defendant's Motion to Dismiss

On June 30, 2023, the Government filed a Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction. *See* Def. Mot. Dismiss at 6.  As Plaintiffs' claims lodged in this Court are subject to a six-year statute of limitations,[13] Defendant argues "Plaintiffs' failure to file their [illegal exaction] claims within the time prescribed by law divests this Court of subject matter jurisdiction over the alleged claims."  *Id.* at 7.  In turn, Plaintiffs assert that the *EWTF* litigation tolled the statute of limitations making their claims in the present case timely.  *See generally*

---

*California*, which is represented by different lead counsel, was consolidated with the present lead case on October 13, 2023.  *Board of Trustees of the Carpenters Health and Welfare Tr. Fund for Cal., et al.* (Consolidation Order) (ECF No. 16).

Plaintiffs in *Board of Trustees of the Carpenters Health and Welfare Tr. Fund for Cal., et al.* thereafter filed a supplemental response to Defendant's Motion to Dismiss separate from all other Plaintiffs in this case.  *See* Scheduling Order (ECF No. 17) (directing Plaintiffs in *Board of Trustees of the Carpenters Health and Welfare Trust Fund for California, et al.* to file a Supplemental Response to Defendant's Motion to Dismiss); Plaintiffs Board of Trustees of the Carpenters Health and Welfare Trust Fund for California and the Carpenters Health and Welfare Fund for California Response to Defendant's Motion to Dismiss (ECF No. 18) (Board of Trustees' Resp.).  The Board of Trustees Plaintiffs "agree with their Co-Plaintiffs' Response (ECF No. 14) and hereby adopt it."  Board of Trustee's Resp. at 1.  In their Response, the Board of Trustees Plaintiffs wrote separately to address only one issue.  *See infra* note 14.  Therefore, with the exception of note 14, all arguments in this Memorandum and Order refer to Plaintiffs' arguments in their Opposition to Defendant's Motion to Dismiss (ECF No. 14).

[13] As Chief Judge Kimberly A. Moore noted in a recent, precedential Federal Circuit decision: "Section 2501's six-year limitation is jurisdictional."  *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 974 (Fed. Cir. 2023) (citing *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355 (Fed. Cir. 2006) ("[W]e are unwilling to disturb the well-settled law that section 2501 creates a jurisdictional condition precedent for suit in the Court of Federal Claims, which may not be waived by the parties."), *aff'd*, 552 U.S. 130 (2008)).

Plaintiffs' Opposition to Defendant's Motion to Dismiss (ECF No. 14) (Pls. Resp.); Board of

Trustees' Resp.[14]

On January 31, 2024, the Court conducted Oral Argument on Defendant's Motion to

Dismiss.  *See* Minute Entry, dated January 31, 2024.  The Court subsequently ordered Plaintiffs to

provide the dates on which they each made contributions to the TRP for the 2014 benefit year as

---

[14] Plaintiffs Board of Trustees of the Carpenters Health and Welfare Trust Fund for California and the Carpenters Health and Welfare Fund for California allege that as a "self-insured self-administered plan," they were putative class members of the *EWTF* class action, but because "class action counsel incorrectly informed the Court that Plaintiffs were not self-administered," "the Plaintiffs were dismissed without prejudice."  No. 23-1282, Complaint (ECF No. 1) (Board of Trustees Compl.) at ¶¶ 9, 29, 30; *see also* ¶ 2 (citing *Elec. Welfare Tr. Fund*, No. 19-cv-353, Rule 54(b) Judgment (ECF No. 124)) ("This Court has previously determined that the [TRP] established under the Affordable Care Act was not intended to apply and should not have been applied to self-insured, self-administered health and welfare plans, like the Plaintiffs.").  The Court notes that these Plaintiffs neither objected to the *EWTF* settlement nor challenged its classification as "not self-administered" before this Court.  At Oral Argument, Defendant alleged that Plaintiff Board of Trustees of the Carpenters Health is an improper plaintiff and ultimately would not be eligible to recover funds.  OA Tr. at 81:24–82:5 ("[Regarding] the Carpenters Fund, there's two Plaintiffs there, and one of the Plaintiffs is really not proper.  One of the Plaintiffs is not the fund at all, but rather it's the board of directors, so we would probably try and get those dismissed, either by stipulation or through a motion for some sort of judgment on the pleadings.").  Other than being raised at Oral Argument, Defendant did not brief or litigate the issue in this action.  Because the Court finds Plaintiffs' purported claims untimely, the Court need not rule on this issue.

Additionally, Plaintiffs Board of Trustees of the Carpenters Health and Welfare Trust Fund for California and the Carpenters Health and Welfare Fund for California further argue that as a multiemployer trust fund, another prior action in this Court, *Operating Eng'rs Trust Fund v. United States*, "provides an additional period of approximately 18 months of tolling."  Board of Trustees' Resp. at 1–2; *see also* Board of Trustees Compl. ¶ 30; OA Tr. at 71:2–22; *Operating Eng'rs Trust Fund v. United States*, No. 17-cv-01732 (in which EWTF was a plaintiff).  Defendant disputes that action's applicability.  Def. Reply at 20–22 (citing Board of Trustees' Resp. at 1–2) ("[W]ithout citing any legal authority whatsoever, the Carpenters Fund asserts that '[t]his *Operating Engineers* class action provides an additional period of approximately 18 months of tolling for the [p]laintiffs.'").  Defendant argues that the Court in *Operating Eng'rs Trust Fund* "did not have subject-matter jurisdiction to adjudicate any claims brought by EWTF," Def. Reply at 21, because 28 U.S.C. § 1500 precluded the Court from exercising jurisdiction due to ongoing District Court litigation in which EWTF was the plaintiff.  OA Tr. at 73:16–24.  Because the Court concludes 28 U.S.C. § 2501's six year statute of limitations cannot be tolled, the Court need not reach this issue concerning whether such Plaintiffs would be eligible for the identified, additional period of tolling. *See infra* Discussion, Section II.

self-insured self-administered health plans.  Order, dated January 31, 2024 (ECF No. 23) (January 31, 2024 Order) at 1; Table A (providing dates on which payment was remitted); *see also* OA Tr. at 54:16–19.  The Court also directed Plaintiffs to state whether they received timely notice of the EWTF class action during the opt-in period.  January 31, 2024 Order at 1.  In response, Plaintiffs indicated that they either received timely notice, did not receive notice, or had no readily available record of receiving timely notice.  Plaintiffs' Notice, dated February 15, 2024 (ECF No. 27) (Plaintiffs' February 15, 2024 Notice); Plaintiffs' Notice, dated February 27, 2024 (ECF No. 29) (Plaintiffs' February 27, 2024 Notice).[15]

### D.  Supplemental Briefing

On March 5, 2024, the Court ordered supplemental briefing on the following question:

---

[15] In their Notice, Plaintiffs Louisiana Health Service & Indemnity Company Welfare Benefit Plan, Hospital and Medical Plan for BlueCross BlueShield of South Carolina, and Cook Group Health Plan confirm they received timely notice.  Plaintiffs' February 15, 2024 Notice; Plaintiffs' February 27, 2024 Notice.  Plaintiffs Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan, the Board of Trustees of the Carpenter Health and Welfare Trust Fund for California *et al*., and the Care First Flexible Benefits Plan state they did not receive timely notice.  Plaintiffs' February 15, 2024 Notice.  The remaining Plaintiffs state they have "no readily available record of receiving timely notice."  *Id*.

The parties have informed the Court that several Plaintiffs in this action were aware of the EWTF class action, whether by formal notice or other means.  *See* April 19, 2023 Tr. at 7:20-21 ("I believe that most of our clients did receive the class action notice."); *see also* Plaintiffs Board of Trustees of the Carpenters Health and Welfare Trust Fund for California and the Carpenters Health and Welfare Trust Fund for California Supplemental Brief (ECF No. 31) (Bd. Trustees Cal. Suppl. Brief) at 2 ("The Carpenter Plaintiffs did file a claim in the *Electrical Welfare* class action, as they became aware of its existence through means other than being served with a timely class action notice."); Board of Trustees Compl. ¶ 30.

Regardless, no Plaintiff purports that their claims accrued within the last six years and accordingly, all parties agree that each Plaintiff must rely on tolling to avoid dismissal.  OA Tr. 7:16–24; *id*. at 39:8–40:1; *id*. at 70:23–71:2.  As explained *infra*, the Court plainly does not have jurisdiction over Plaintiffs' claims.  28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); *see Campbell v. United States*, 932 F.3d 1331, 1336–37 (Fed. Cir. 2019); *Adera v. United States*, 155 Fed. Cl. 553, 558 (2021), *aff'd*, No. 2022-1074, 2023 WL 3768645 (Fed. Cir. June 2, 2023).

"Whether *American Pipe* tolling is available to an individual plaintiff where (i) such plaintiff received timely notice of a previously-filed, opt-in class action but affirmatively chose not to join or seek to join the action as a class member, and (ii) class certification was *granted* in that action." Order, dated March 5, 2024 (ECF No. 30) (Order Suppl. Briefing) at 2 (emphasis in original).[16] Specifically, the Court ordered the parties to "identify any decisions issued by the United States Court of Federal Claims, the United States Court of Appeals for the Federal Circuit, or the Supreme Court of the United States and explain what, if any, impact such decisions or lack thereof have on the pending Motion [to Dismiss]." *Id.*

In supplemental briefing, no party was able to identify a past decision in which *American Pipe* tolling was applied to an action in this Court after an opt-in class had been certified in an underlying class action. Plaintiffs' Supplemental Brief (ECF No. 33) (Pl. Suppl. Brief) at 2 ("Plaintiffs have been unable to identify an opt-in case that squarely addresses the question asked."); Defendant's Supplemental Brief (ECF No. 32) (Def. Suppl. Brief) at 1–2; *see generally* Bd. Trustees Cal. Suppl. Brief. Despite this, the Government asserts that "many courts addressing opt-out class actions have expressly held that *American Pipe* tolling is available to litigants who elected to opt out of a certified class." Def. Suppl. Brief at 2. Defendant therefore states that should the Court hold that *American Pipe* tolling applies to section 2501 (contrary to the Government's position), no reason exists to treat class certification as a bar to class action tolling

---

[16] In its Order, the Court noted that *American Pipe* tolling has previously been available in specific circumstances to individual, putative class members where the original, underlying case was dismissed or where class certification was denied. Order Suppl. Briefing at 1; *see American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 542–43 (1974); *Bright v. United States*, 603 F.3d 1273, 1274 (Fed. Cir. 2010) (underlying case dismissed); *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 790 (Fed. Cir. 2009) (class certification denied); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1348 (Fed. Cir. 2000) (class certification denied); Def. Mot. Dismiss at 16 (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349–50 (1983)); Pls. Resp. at 8; Board of Trustees' Resp. at 1.

in this Court, while the same is not true for opt-out class actions in other Courts.  *Id*. at 3–4.[17]

Accordingly, Defendants do not argue that Plaintiffs' decision to forgo joining the *EWTF* class

action would bar Plaintiffs from bringing the present individual suits; it argues only that equitable

tolling is unavailable to Plaintiffs here.

With this relevant background in place, the Court turns to the merits of Defendant's Motion

to Dismiss.  At issue is whether tolling is available to Plaintiffs, and consequently, whether this

Court possesses subject matter jurisdiction.  As the Court concludes *American Pipe* tolling cannot

---

[17] Plaintiffs' counsel indicated at a prior status conference and during Oral Argument that despite notice, at least some of the Plaintiffs in the present action affirmatively chose to not opt in to the *EWTF* class action.  April 19, 2023 Tr. at 7:18–8:12 (The Court: "Let me ask you, [Plaintiffs' Counsel], did your clients get the class notice that was sent out in *EWTF*?"  Plaintiffs' Counsel: "I believe that most of our clients did receive the class action notice . . . [A] number of them, such as Humana, we represented as an individual plaintiff in . . . other two prior Affordable Care Act cases as well."  The Court: "I see . . .  So this is an affirmative choice it sounds like to – " Plaintiffs' Counsel: "Yes, Your Honor." The Court: "-- to be separate.  Okay."); OA Tr. at 27:21–24 (The Court: "I'd like to know why not join -- why not opt in here? I already ruled for the Plaintiffs long before even the notice period began, right?  You know your clients were going to get money, why not opt in?").  At Oral Argument, Plaintiffs' counsel cited strategic reasons for Plaintiffs' affirmative decision to not join *EWTF's* class action, among them, that some of the Plaintiffs were longstanding clients of counsel's firm and preferred to proceed with Plaintiffs' counsel, concern regarding a delay in recovery from the Department of Treasury due to the nature of class actions, and other related "considerations where they might want to proceed with a case differently from a class action."  OA Tr. at 28:15–32:6.

In the present Motion, Plaintiffs allege they were putative members of the *EWTF* class action, which litigated the same illegal exaction claims as those presently before the Court.  In the *EWTF* class action, this Court denied the Government's motion to dismiss as it related to EWTF's illegal exaction claim on July 30, 2021, and plainly stated that the text of the ACA did not grant HHS the authority to collect TRP contributions for the 2014 benefit year from self-insured group health plans that did not use a third-party administrator.  *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 181–84.  Subsequently, this Court granted summary judgment in favor of the Exaction Class and certified the class.  *Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 469–70; *Elec. Welfare Tr. Fund*, No. 19-cv-353, Order, dated December 21, 2022 (ECF No. 97) at 1.  Accordingly, while pursuit of a separate action is generally permitted if timely filed, the practical fruitfulness of pursuing a separate action is questionable where, as here, Plaintiffs would likely have been members of the Exaction Class and entitled to damages for their respective illegal exaction claims.  Indeed, the Court ultimately awarded judgment for 100% of the Exaction Class damages, and pursuant to a later settlement agreement, approved a distribution of 91.25% of that judgment.  *See Elec. Welfare Tr. Fund*, 171 Fed. Cl. at 392.

be applied to toll the deadlines mandated by 28 U.S.C. § 2501, this Court need not reach the parties' secondary arguments regarding claim accrual.

## APPLICABLE LEGAL STANDARD

To withstand a motion to dismiss pursuant to Rule 12(b)(1), a "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)); *see also* Rule 12(b)(1). The court must accept as true all undisputed facts asserted in the complaint and draw reasonable inferences in favor of the plaintiff. *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016); *Estes Exp. Lines*, 739 F.3d at 692. The court however is not limited to the pleadings in its jurisdictional inquiry; "it may 'inquire into jurisdictional facts' to confirm jurisdiction." *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 696 (2023) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)). This Court must dismiss all claims that do not fall within its subject matter jurisdiction. *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## DISCUSSION

Defendant's Motion to Dismiss for lack of subject matter jurisdiction asserts two arguments in favor of dismissal. First, Defendant contends that Plaintiffs' actions are untimely because the applicable statute of limitations, 28 U.S.C. § 2501, is not amenable to equitable tolling and is therefore unavailable to Plaintiffs. Def. Mot. Dismiss at 7. Second, Defendant argues that even if Plaintiffs were correct that equitable tolling is applicable here, Plaintiffs' claims accrued over six years ago and are therefore still untimely under the applicable statute of limitations. *Id.*

In addressing Defendant's Motion to Dismiss, the Court will first address the parties'

arguments regarding equitable – or *American Pipe* – tolling.  As discussed below, this Court holds that 28 U.S.C. § 2501 cannot be tolled as a matter of law, and consequently that Plaintiffs' claims are barred by the statute of limitations.  Accordingly, as this Court lacks subject matter jurisdiction over Plaintiffs' claims, it grants Defendant's Motion to Dismiss.[18]

## I.    <u>The Court's Jurisdiction and Applicable Statute of Limitations</u>

The Tucker Act's statute of limitations permits the Court of Federal Claims to exercise jurisdiction over claims filed within six years of the date of accrual.  28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); *Campbell*, 932 F.3d at 1336–37; *Adera*, 155 Fed. Cl. at 558, *aff'd*, No. 2022-1074, 2023 WL 3768645 (Fed. Cir. June 2, 2023).  In *John R. Sand & Gravel Co. v. United States*, the Supreme Court held that this Court's statute of limitations, 28 U.S.C. § 2501, is jurisdictional in nature and therefore not susceptible to equitable tolling.  *See John R. Sand & Gravel Co.*, 552 U.S. 130, 134 (2008); *Campbell*, 932 F.3d at 1336–37 (citing *John R. Sand & Gravel Co.*, 552 U.S. at 130); *United States v. Wong*, 575 U.S. 402, 412–13 (2015) (internal citations omitted) (citing *Kendall v. United States,* 107 U.S. 123, 125–26 (1883); *Finn v. United States,* 123 U.S. 227, 232 (1887); *Soriano v. United States,* 352 U.S. 270, 273–74 (1957)) ("[T]he statute of limitations governing contract (and some other non-tort) suits brought against the United States under the Tucker Act . . . [has] long provided that such suits 'shall be forever barred' if not filed within six years.  And this Court repeatedly held that 6–year limit to be jurisdictional and thus not subject to equitable tolling.").

Since *John R. Sand*, this Court and the United States Court of Appeals for the Federal Circuit have reiterated on several occasions, without qualification, that 28 U.S.C. § 2501 is

---

[18] As this Court lacks jurisdiction over Plaintiffs' actions, it refrains from addressing the parties' arguments regarding claim accrual, as doing so would be advisory in nature.

impervious to equitable tolling.  *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34) ("[E]quitable tolling ... is foreclosed by *John R. Sand & Gravel*, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations."); *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (2017) (referencing *John R. Sand* in stating that "[28 U.S.C. § 2501] may not be equitably tolled or waived."); *Adera v. United States*, No. 2022-1074, 2023 WL 3768645, at *2 (Fed. Cir. June 2, 2023) (citing *John R. Sand & Gravel Co.*, 552 U.S. at 134) (describing *John R. Sand* as "holding that § 2501 sets forth a 'more absolute, kind of limitations period' and is not subject to equitable tolling"); *Jordan v. United States*, 158 Fed. Cl. 440, 445–46 (2022) (internal citations omitted) (citing *John R. Sand & Gravel Co.*, 552 U.S. at 133–39) ("[Because] [t]he Supreme Court has 'long interpreted' this Court's limitations statute as 'absolute' and 'jurisdictional[,]' . . . the statute of limitations is not subject to equitable tolling.").

Subject to 28 U.S.C. § 2501, the Tucker Act grants this Court jurisdiction over illegal exaction claims.  28 U.S.C. § 1491(a); *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 181–82 (citing *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).  An illegal exaction claim involves money "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp*, 372 F.2d at 1007); *see also Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573–74 (Fed. Cir. 1996).  Said differently, "[i]llegal exaction claims are those alleging that 'the [g]overnment has the citizen's money in its pocket.'"  *Jordan*, 158 Fed. Cl. at 453 (quoting *Eastport S.S. Corp.*, 372 F.2d at 1008).  Such a claim "involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution."  *Norman*, 429 F.3d at 1095 (citing *Casa de Cambio Comdiv S.A.,*

*de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002)).   In accordance with its jurisdictional nature, the Tucker Act's statute of limitations, "makes no exceptions for illegal exaction claims even where otherwise properly pled." *Jordan*, 158 Fed. Cl. at 454 (citing *Adera*, 155 Fed. Cl. at 558).

## II.   <u>This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims</u>

As a preliminary matter, the parties agree that without tolling, Plaintiffs' claims are untimely.   OA Tr. 7:16–24 (Defendant's Counsel: "So a starting point for today, everyone agrees, that all of these complaints are untimely under 28 U.S.C. Section 2501.   The only way for them to become timely is if 2501 can somehow be tolled to make their claims timely."); *id.* at 39:9–40:1 (The Court: "If I rule against you on tolling . . . is the case over?" . . . Plaintiffs' Counsel: "Yes, if tolling does not apply . . . yes, Your Honor, I agree with you."); *see also* Pls. Resp. at 26.

Plaintiffs filed their complaints between May 3, 2023 and August 29, 2023.   *See, e.g.*, *Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan*, No. 23-cv-641 (Complaint filed on May 3, 2023); *Health Care Serv. Corp. Master Flexible Benefit Plan,* No. 23-cv-1491 (Complaint filed on August 29, 2023).   Thus, should tolling be unavailable, Plaintiffs' claims must have accrued within six years prior to 2023 to be considered as timely filed.   Although the parties dispute the precise date of accrual, under either scenario, it is undisputed that each of Plaintiffs' claims accrued well-before 2017.[19]   Moreover, the last of any payments remitted by Plaintiffs to HHS

---

[19] Plaintiffs contend that the accrual date for Plaintiffs' illegal exaction claims occurred, at the earliest, on January 15, 2015, "when Plaintiffs were required to make their TRP contributions for 2014 pursuant to the HHS rule." Pls. Resp. at 26.   Plaintiffs assert their position is accurate because "under this Court's caselaw, an illegal exaction claim only begins to accrue from when the Government exacts the claimant's monies, *i.e.*, when a disputed payment is made or monies are withheld from the plaintiff." *Id.* at 25.   According to Plaintiffs, "[t]his focus on the actual payment, or withholding, of the plaintiff's money as giving rise to the cause of action makes sense in an illegal exaction case because it is based on the nature of the claim itself." *Id.*   In contrast, Defendant argues that Plaintiffs' illegal exaction claims accrued "no later" than March 11, 2013. Def. Mot. Dismiss at 21.   To determine this date, Defendant relies on decisions that determined

occurred in 2015.  *See* Table A; Def. Mot. Dismiss at 16.  As a result of this reality, the parties'

briefs recognize the integral nature of tolling to this action, and large portions of their respective

briefs are dedicated to legal arguments regarding tolling.  As such, the winding legal history on

the topic of tolling merits discussion.

In its 1974 decision, *American Pipe & Construction Co. v. Utah,* the Supreme Court held

that the commencement of a timely class action lawsuit pursuant to Federal Rule of Civil Procedure

(FRCP) 23 tolled the applicable statute of limitations period for putative class members under the

Clayton Act where class certification was ultimately denied.  414 U.S. 538, 554 (1974).

Specifically, the Court explained: "We are convinced that the rule most consistent with federal

class action procedure must be that the commencement of a class action suspends the applicable

statute of limitations as to all asserted members of the class who would have been parties had the

suit been permitted to continue as a class action."  *Id.*;[20] *see also Cal. Pub. Employees' Ret. Sys. v.*

*ANZ Sec., Inc*., 582 U.S. 497, 508–09 (2017) (*CalPERS*).  Accordingly, from the date class

certification is denied, "the statute-of-limitations clock begins to run again for the individual

members of the failed class" and each member of the putative class "then has the remaining days

_____

the accrual date for Takings claims.  *Id.* at 20–21.  In accordance with such cases, Defendant
contends that March 11, 2013 is the correct accrual date because it is the date on which HHS
promulgated its final rule defining "contributing entity" to include self-administered, self-insured
health plans.  *Id.* at 21 (citing *Elec. Welfare Tr. Fund*, 155 Fed. Cl. at 177) (The final rule
"established the contribution rate applicable to all 'contributing entities,' including plaintiffs, for
the 2014 benefit year." (citing HHS Notice of Benefit and Payment Parameters for 2014 (Final
Rule), 78 Fed. Reg. at 15,460)).

[20] The *American Pipe* Court qualified its holding, noting that "at least where class action status has
been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of
all members is impracticable,' the commencement of the original class suit tolls the running of the
statute for all purported members of the class who make timely motions to intervene after the court
has found the suit inappropriate for class action status."  *American Pipe & Construction Co.*, 414
U.S. at 552–53.

under the limitations period to intervene as an individual plaintiff in the action." *Kelly v. United States*, 171 Fed. Cl. 550, 560 (2024) (citing *American Pipe & Construction Co.*, 414 U.S. at 561).

Despite *American Pipe's* narrow holding, the Supreme Court in *Crown, Cork & Seal Co., Inc. v. Parker*, extended the availability of *American Pipe* tolling to potential class members who opted to file individual suits rather than intervene in the original putative class action. 462 U.S. 345, 353–54 (1983). The Court reasoned that this holding aligned most closely with the principles set forth in *American Pipe*:

> The *American Pipe* Court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights. Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure that their rights would not be lost in the event that class certification was denied. Much the same inefficiencies would ensue if *American Pipe's* tolling rule were limited to permitting putative class members to intervene after the denial of class certification. There are many reasons why a class member, after the denial of class certification, might prefer to bring an individual suit rather than intervene . . . . The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id*. at 350–51; *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n.13 (1974).[21]

Critical to understanding the Supreme Court's jurisprudence on this issue is its 2008 decision in *John R. Sand & Gravel Co. v. United States*, which squarely addressed the Court of Federal Claims' statute of limitations in Tucker Act actions, 28 U.S.C. § 2501. 552 U.S. at 134. Specifically, the Court considered "whether a court must raise on its own the timeliness of a lawsuit

---

[21] Indeed, the Government agrees that subsequent Supreme Court precedent makes clear that *American Pipe* tolling is "equally available to putative class members who seek to intervene in the original class action and to putative class members who elect to file actions of their own." Def. Mot. Dismiss at 16 (citing *Crown, Cork & Seal Co.*, 462 U.S. at 349–50); *see also* Def. Suppl. Brief at 3–4 ("[W]e see no reason to treat class certification as a bar to class action tolling for opt-in class actions but not for opt-out class. We accordingly do not argue in this case that plaintiffs' decision not to join a certified opt-in class, standing alone, bars them from bringing their individual suits."). *See supra* Background, Section IV.

filed in the Court of Federal Claims, despite the Government's waiver of the issue." *Id.* at 132. After explaining that 28 U.S.C. § 2501 is *jurisdictional* in nature, the Supreme Court held "that the special statute of limitations governing the Court of Federal Claims requires . . . *sua sponte* consideration." *Id.*  In its analysis, the Court specifically addressed the effect of section 2501's jurisdictional status on equitable tolling.  *Id.* at 133–34.  The Supreme Court's explanation of section 2501 is critical because the statute's unequivocal status as jurisdictional in nature forecloses certain arguments regarding tolling.  *Supra* Discussion, Section I.  The Supreme Court specifically discussed such distinctions in *John R. Sand*, explaining:

> Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims.  Thus, the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver.  Such statutes also typically permit courts to toll the limitations period in light of special equitable considerations.

> Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency.  The Court has often read the time limits of these statutes *as more absolute*, say, as requiring a court to decide a timeliness question despite a waiver, *or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period*.  As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as "jurisdictional."

> This Court has long interpreted the court of claims limitations statute as setting forth this *second*, more absolute, kind of limitations period.

552 U.S. at 133–34 (emphases added) (internal citations omitted).

In 2010, following the Supreme Court's decision in *John R. Sand*, the Federal Circuit decided *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010).  In *Bright*, plaintiffs appealed the Court of Federal Claims' decision to grant the Government's motion to dismiss on the basis that plaintiffs had failed to opt in to a putative class action until after the expiry of section 2501's six-year statute of limitations period.  *Id*. at 1277.  In its analysis regarding tolling, the Federal Circuit

explained that "[b]ecause the Supreme Court chose to describe the appropriate statute of limitations as being 'tolled,' we have referred to 'the tolling rule of *American Pipe*' and have framed the question to be decided as 'whether the limitations period was tolled.'"  *Id.* at 1284 (citing *Stone Container Corp. v. United States*, 229 F.3d 1345, 1352, 1354 (Fed. Cir. 2000); *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 791–92 (Fed. Cir. 2009)).  In finding that *American Pipe* tolling applied to this Court's statute of limitations, the Federal Circuit held:

> [W]hen a class action complaint is filed in the Court of Federal Claims and class certification is sought prior to expiration of the section 2501 limitations period, the limitations period is tolled.  The limitations period is tolled during the period the court allows potential class members to opt in to the class.

*Id.* at 1274.  In *Bright*, the Federal Circuit distinguished *John R. Sand's* equitable tolling bar and, instead, determined that *American Pipe* tolling is applicable to section 2501 because it was a form of *statutory*, not equitable tolling.  *Id.* at 1287–88.  Accordingly, the Federal Circuit determined that *John R. Sand's* explanation regarding equitable doctrines was irrelevant to the tolling directive in *American Pipe*.  *See id.*  In other words, and as Plaintiffs acknowledge, *Bright* "rested on the proposition that *American Pipe* tolling is not an equitable doctrine at all, but rather a statutory directive drawn from Rule 23."  Pls. Resp. at 9.  Specifically, the Federal Circuit explained in *Bright*:

> In our view, the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred.  The two concepts are different.  Equitable tolling is a principle that permits courts to modify a statutory time limit and "extend equitable relief" when appropriate.  Class action statutory tolling, on the other hand, does not modify a statutory time limit or "extend equitable relief."  Rather, it is a procedure that suspends or tolls the running of the limitations period for all purported members of a class once a class suit has been commenced, in a manner consistent with the proper function of a statute of limitations.

*Bright*, 603 F.3d at 1287–88 (internal citations and quotations omitted).  As reflected above, in holding that *American Pipe* tolling was a form of statutory tolling, the Federal Circuit also

reiterated that "equitable tolling is barred under section 2501." *Id.* at 1287.

In 2017, the Supreme Court decided *CalPERS*, 582 U.S. at 497.  In *CalPERS*, plaintiff California Public Employees' Retirement System filed suit alleging certain violations of section 11 of the Securities Act in connection with its purchase of public securities offerings in 2007 and 2008.  *Id.* at 502.  Plaintiff was a putative member of a class action filed on behalf of purchasers of these securities, but plaintiff also filed a separate suit outside the time permitted by statute.  *Id.* at 501.  The class action ultimately reached a proposed settlement, but plaintiff, "apparently convinced it could obtain a more favorable recovery in its separate suit, opted out of the class." *Id.* at 503.

Section 13 of the Securities Act requires Section 11 suits to be filed within three years of the relevant securities offering.  *Id.* at 505.  Although the class-action suit was timely filed, plaintiff CalPERS filed its separate suit more than three years after the relevant securities offerings.  *Id.* at 501.  Accordingly, defendant moved to dismiss, alleging plaintiff's claims were untimely.  *Id.* at 503.  Relying on *American Pipe*, plaintiff argued "that the 3–year period was tolled during the pendency of the class-action filing."  The Supreme Court explained:

> The question then is whether § 13 permits the filing of an individual complaint more than three years after the relevant securities offering, when a class-action complaint was timely filed, and the plaintiff filing the individual complaint would have been a member of the class but for opting out of it.  The answer turns on the *nature and purpose* of the 3–year bar and of the tolling rule that petitioner seeks to invoke.

*Id.* at 504 (emphasis added).  The Court first determined that Section 13's 3-year bar was a statute of repose, not a statute of limitations.  *Id.* at 505.  Its status as a statute of repose meant it would not be subject to any form of equitable tolling.  *Id.* at 508 (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 9–10 (2014); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)) ("[T]he Court repeatedly has stated in broad terms that statutes of repose are not subject

to equitable tolling.").  Thus, dispositive to the Court's ultimate holding was whether *American Pipe* tolling, the form of tolling plaintiff sought to invoke, was a form of equitable tolling as opposed to a form of statutory tolling.  The Court explained:

> [T]he source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions.  Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule.  Nor could it have.  The central text at issue in *American Pipe* was Rule 23, and Rule 23 does not so much as mention the extension or suspension of statutory time bars.
>
> The Court's holding was instead grounded in the traditional equitable powers of the judiciary. The Court described its rule as authorized by the "judicial power to toll statutes of limitations."  The Court also relied on cases that are paradigm applications of equitable tolling principles, explaining with approval that tolling in one such case was based on "considerations 'deeply rooted in our jurisprudence.'" . . .
>
> Perhaps for these reasons, this Court has referred to *American Pipe* as "equitable tolling."  It is true, however, that the *American Pipe* Court did not consider the criteria of the formal doctrine of equitable tolling in any direct manner.  It did not analyze, for example, whether the plaintiffs pursued their rights with special care; whether some extraordinary circumstance prevented them from intervening earlier; or whether the defendant engaged in misconduct.  The balance of the Court's reasoning nonetheless reveals a rule based on traditional equitable powers, designed to modify a statutory time bar where its rigid application would create injustice.
>
> This analysis shows that the *American Pipe* tolling rule does not apply to the 3–year bar mandated in § 13.

*Id*. at 509–10 (internal citations omitted).  Thus, in *CalPERS* the Supreme Court clarified unequivocally that *American Pipe* tolling is a form of equitable tolling.  The Supreme Court's holding directly contrasts with the Federal Circuit's earlier decision in *Bright*, which had conversely reasoned *American Pipe* tolling is a form of statutory, not equitable tolling.  *Bright*, 603 F.3d at 1287–88 ("Class action statutory tolling, on the other hand, does not modify a statutory time limit or 'extend equitable relief.'  Rather, it is a procedure that suspends or tolls the running of the limitations period for all purported members of a class once a class suit has been

commenced."); *see also id*. at 1287 ("In our view, the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred.").

The Federal Circuit has not since had the occasion to address the validity of its holding in *Bright* in the context of the Supreme Court's later – and directly contrary – holding in *CalPERS*. However, following *John R. Sand*, the Federal Circuit and the Court of Federal Claims have reiterated, without qualification, on several occasions that 28 U.S.C. § 2501 is impervious to equitable tolling. *Young*, 529 F.3d at 1384 (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34) ("[E]quitable tolling ... is foreclosed by *John R. Sand & Gravel*, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations."); *Reoforce, Inc.*, 853 F.3d at 1264 (citing *John R. Sand* in stating that "[28 U.S.C. § 2501] may not be equitably tolled or waived."); *Adera*, 2023 WL 3768645, at *2 (citing *John R. Sand & Gravel Co.*, 552 U.S. at 134) (describing *John R. Sand* as "holding that § 2501 sets forth a 'more absolute, kind of limitations period' and is not subject to equitable tolling"); *Jordan*, 158 Fed. Cl. at 445–46 (citing *John R. Sand & Gravel Co.*, 552 U.S. at 133–39) ("[Because] [t]he Supreme Court has 'long interpreted' this Court's limitations statute as 'absolute' and 'jurisdictional[,]'. . . the statute of limitations is not subject to equitable tolling.").

Moreover, recently on May 8, 2024, another judge of the Court of Federal Claims examined *Bright* in light of *CalPERS* in *Kelly v. United States*. 171 Fed. Cl. at 561. In *Kelly*, plaintiff asserted that his Fifth Amendment Takings claim was timely despite being filed outside of this Court's statute of limitations, contending that the limitations period was tolled during the pendency of a class action in which plaintiff was a putative member. *Id*. at 556; *see also id.* at 560. After analyzing the above-referenced cases, Judge Molly R. Silfen concluded that, following the Supreme Court's ruling in *CalPERS*, "*American Pipe* tolling cannot be applied to section 2501."

*Id.* at 564 n.4; *see also id.* at 560 ("The government is correct: The Tucker Act's statute of limitations is not subject to class-action tolling.").[22]

A. __The Supreme Court has Foreclosed *American Pipe* Tolling of 28 U.S.C § 2501__

At the core, the parties fundamentally disagree whether *Bright*, and consequently tolling under this Court's statute of limitations, remains viable and applicable in the Court of Federal Claims.  Plaintiffs contend that *Bright* remains binding precedent on this Court and that even if given the opportunity, there is no clear indication that the Federal Circuit would overrule *Bright*. Pls. Resp. at 6.  Said differently, Plaintiffs argue that although *Bright* has been undermined by the Supreme Court, it has not been directly overruled, and accordingly *Bright* remains binding on this Court.  *Id.* at 10.  In contrast, Defendant contends that *Bright* is unsalvageable considering intervening Supreme Court precedent, and further reasons that because the Federal Circuit has consistently held section 2501 is not subject to equitable tolling, the Supreme Court's ruling in *CalPERS* is dispositive to the outcome of this action.  Def. Mot. Dismiss at 7; OA Tr. at 11:14–22.

After extensive review of the relevant jurisprudence, and considering the Federal Circuit's instruction that "the issues decided by the higher court need not be identical to be controlling," the Court holds that that it must unquestionably follow intervening Supreme Court precedent in *CalPERS*, which has clearly "undercut the theory or reasoning underlying [*Bright*] in such a way that the cases are clearly irreconcilable."  *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed.

---

[22] On June 4, 2024, Defendant filed a Notice of Additional Authority regarding *Kelly v. United States.  See* Defendant's Notice of Additional Authority (ECF No. 34) (citing *Kelly*, 171 Fed. Cl. at 550).  Plaintiffs thereafter filed a Response, contending the Court in *Kelly* made "core errors in [its] analysis of the Tucker Act's statute of limitations."  Plaintiffs' Response to the Government's Notice of Additional Authority (ECF No. 35) (Pls. Resp. Authority) at 1.  Each of Plaintiffs' responsive arguments are addressed in the Court's analysis below.

Cir. 2014) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).

    a. **Plaintiffs' Interpretation of *Bright* Fails to Support its Argument**

According to Plaintiffs, *Bright* is "squarely on point and disposes of the Government's motion to dismiss." Pls. Resp. at 6.[23] Although Plaintiffs concede the reasoning of *Bright* has been "undermined" by the Supreme Court's holding in *CalPERS*, Plaintiffs nevertheless contend that *Bright's* now-inaccurate description of *American Pipe* tolling as statutory in nature is not dispositive to the outcome of the present actions. *Id.* at 12–14. To this end, Plaintiffs point to other portions of *Bright* that they contend support their position. *Id.* Plaintiffs further assert that Defendant's reliance on *John R. Sand* and *CalPERS* misses the mark. *Id*. at 14–17.

Specifically, Plaintiffs argue that to the extent *CalPERS* undermines *Bright* in stating *American Pipe* tolling is equitable (and not statutory) in nature, *Bright* remains good law in part because the Federal Circuit provided multiple bases for its ruling. *Id*. at 12–14. At the outset, Plaintiffs concede that the reasoning of *Bright* rested on a statutory proposition that has since been undermined by the Supreme Court in *CalPERS*. *Id.* at 9–10 ("*Bright* rested on the proposition that *American Pipe* tolling is not an equitable doctrine at all, but rather a statutory directive drawn from Rule 23. And it is also true that this particular assertion has been undermined by the Supreme Court's decision in *CalPERS*, 582 U.S. at 509, which held that the statutory limitations period at issue in that case was a statute of repose and thus not amenable to equitable tolling, and in the course of so holding described *American Pipe* tolling as equitable, rather than statutory, in nature."); *id.* at 13 ("To be sure, [in *Bright*] the Federal Circuit read *American Pipe* as resting on a statutory foundation and not as a form of equitable tolling, at least not in the sense discussed in

---

[23] As discussed in Section II.B, Plaintiffs assert that *Bright* remains not only binding precedent for this Court, but also for any Federal Circuit panel. Pls. Resp. at 9 (citing *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2016)). *See* Discussion, Section II.B.

*John R. Sand.*"); *id*. at 22 ("To be sure, *CalPERS* undermines *Bright's* characterization of *American Pipe* as statutory rather than equitable in origins."); *see also* Def Reply at 9 (noting Plaintiffs' acknowledgements).

Plaintiffs note that the Federal Circuit's reasoning in *Bright* also included a rejection of the Government's claim that "permitting such tolling would constitute using procedural rules to impermissibly expand the Court of Federal Claims' jurisdiction."  Pls. Resp. at 12.  Instead, Plaintiffs note that the Federal Circuit explained that Rule 23 has the same force as a statute. *Bright*, 603 F.3d at 1279.  Further, Plaintiffs argue that despite the Federal Circuit's incorrect reading of *American Pipe* as a form of statutory – not equitable – tolling, *Bright* nonetheless also differentiated equitable tolling and *American Pipe* class action tolling.  Pls. Resp. at 12–13 (Plaintiffs argue that "while acknowledging that *John R. Sand* held that § 2501's limitation is 'jurisdictional' and 'forbid[s] a court to consider whether *certain* equitable considerations warrant extending a limitations period,' the Federal Circuit distinguished between the cases based on the form of equitable tolling at issue in *John R. Sand* and class action *American Pipe* tolling.").  Finally, Plaintiffs point to *Bright's* favorable reference of *Barbieri v. United States*, a 1988 Claims Court decision, which applied *American Pipe* tolling to the Tucker Act's statute of limitations.  *Id*. at 13–14, 19 n.3.

These arguments fail to carry the weight Plaintiffs proffer.  First, the Federal Circuit's finding that Rule 23 has the same force as a statute is irrelevant to the issue at hand in light of the Supreme Court's clear and contrary analysis in *CalPERS*.  *CalPERS*, 582 U.S. at 509 ("Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule.  Nor could it have.  The central text at issue in *American Pipe* was Rule 23, and Rule 23 does not so much as mention the extension or suspension of statutory time bars.").

Second, Plaintiffs read *Bright* to distinguish equitable tolling from *American Pipe* tolling. While creative, Plaintiffs' interpretation is plainly contrary to binding precedent. Specifically, though Plaintiffs make much of the phrase "certain"[24] in *John R. Sand*, this Court, the United States Court of Appeals for the Federal Circuit, and the Supreme Court have reiterated on several occasions that 28 U.S.C. § 2501 is impervious to equitable tolling *without qualification*.[25] *Wong*, 575 U.S. at 412–13 (citing *Kendall,* 107 U.S. at 125–126; *Finn,* 123 U.S. at 232; *Soriano,* 352 U.S. at 273–274) ("[T]he statute of limitations governing contract (and some other non-tort) suits brought against the United States under the Tucker Act. See § 2501 . . . [has] long provided that such suits 'shall be forever barred' if not filed within six years. And this Court repeatedly held that 6–year limit to be jurisdictional and thus not subject to equitable tolling."); *Young*, 529 F.3d at 1384 (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34) ("[E]quitable tolling … . . is foreclosed by *John R. Sand & Gravel*, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations."); *Reoforce, Inc.*, 853 F.3d at 1264 (referencing *John R. Sand* in stating that "[28 U.S.C. § 2501] may not be equitably tolled or waived"); *Adera*, 2023 WL 3768645, at *2 (citing *John R. Sand & Gravel Co.*, 552 U.S. at 134); *Jordan*, 158 Fed. Cl. at 445–46 (citing *John R. Sand & Gravel Co.*, 552 U.S. at 133–39).

---

[24] *John R. Sand & Gravel Co.*, 552 U.S. at 133–34 (emphases added) (internal citations omitted) ("The Court has often read the time limits of these statutes as more absolute, say, as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether *certain* equitable considerations warrant extending a limitations period. As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional.'").

[25] For this reason, Plaintiffs' contrary argument that the Supreme Court in *John R. Sand* somehow left open the possibility of equitable tolling, even for jurisdictional statues of limitations, is unavailing. Pls. Resp. Authority at 1 ("Even where a statute of limitations has been described as 'jurisdictional' and thus 'more absolute,' the Court has been careful (as it was in *John R. Sand*), to limit the scope of such pronouncements.").

Further, Plaintiffs' attempt to differentiate "traditional equitable tolling" from *American Pipe* tolling, which Plaintiffs assert could be described as a type of "statutory equitable tolling," carries little, if any, weight in case law.  Pls. Resp. at 12–13; Pls. Resp. Authority at 2; OA Tr. at 25:18–19.  Plaintiffs lack support for their argument and instead primarily rely on a portion of *Bright*, which states:

> Equitable tolling is a principle that permits courts to modify a statutory time limit and "extend equitable relief" when appropriate.  *See Irwin,* 498 U.S. at 96, 111 S.Ct. 453 (describing the range of instances in which courts have applied the equitable tolling doctrine); *see also, Hallstrom v. Tillamook County,* 493 U.S. 20, 27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (a "traditional equitable tolling principle" should not be applied to a statutory limitations period when "the equities do not weigh in favor of modifying statutory requirements"). Class action statutory tolling, on the other hand, does not modify a statutory time limit or "extend equitable relief." Rather, it is a procedure that suspends or tolls the running of the limitations period for all purported members of a class once a class suit has been commenced, in a manner consistent with the proper function of a statute of limitations. *See Arctic Slope,* 583 F.3d at 791 (statutory class action tolling principles permit "the statute of limitations [to be] suspended during the pendency of the class action proceedings").

603 F.3d at 1287–88; *see* Pls. Resp. at 13.

Plaintiffs read too far into these statements, which the Federal Circuit discussed in the pre-*CalPERS* context that *American Pipe* tolling was then-considered statutory, not equitable in nature. Nothing in *Bright*, or in any other precedent cited by Plaintiffs, provides support for reclassifying *American Pipe* tolling into a new category of "statutory equitable tolling."[26]  *See generally* Pls.

---

[26] At Oral Argument, Defendant likewise stressed this lack of distinction in case law.

> Defendant's Counsel: "And I want to stress again, we have seen no case making a distinction between what Plaintiffs call traditional forms of equitable tolling and *American Pipe*, which is equitable tolling. We've seen none of that. Courts treat equitable tolling as one group. Equitable tolling is equitable tolling, no matter what kind of considerations the Court takes a look at. And the Supreme Court has made clear that equitable tolling, in any form, cannot apply to jurisdictional statutes of limitations."

> The Court: "And it hasn't been dissected into . . . different types of equitable

Resp.; *see also Kelly*, 171 Fed. Cl. at 561 (citing *Bright*, 603 F.3d at 1285–88) (rejecting plaintiff's argument that "*Bright* characterized class-action tolling as distinct from either [equitable or statutory tolling]," and noting that "*Brigh*t held that *American Pipe* tolling is statutory, and its reasoning hinges on that categorization").  Moreover, *CalPERS* itself refers to *American Pipe* equitable tolling as grounded in traditional equitable powers.  *CalPERS*, 582 U.S. at 509 (quoting *American Pipe & Constr. Co*., 414 U.S. at 558) ("The Court's holding [in *American Pipe*] was [] grounded in the traditional equitable powers of the judiciary.  The Court described its rule as authorized by the 'judicial power to toll statutes of limitations.'"); *id*. at 510 ("The balance of the Court's reasoning nonetheless reveals a rule based on traditional equitable powers . . . .").  Additionally, in *CalPERS*, *American Pipe's* equitable tolling status made it impervious to the 3-year time bar at issue, without exception.  Thus, the Supreme Court's description of *American Pipe* tolling as equitable in nature, when paired with the Supreme Court and Federal Circuit's unqualified holdings that section 2501 does not permit equitable tolling, leaves no room for distinguishing away these clear guard rails.

*Lastly*, although Plaintiffs are correct that *Bright* favorably cites to the reasoning in *Barbieri*, its reference does not affect the Court's clear directive from the Supreme Court.  *Bright* references *Barbieri*'s interpretation of *American Pipe* tolling *before* the Supreme Court in *CalPERS* made clear that *American Pipe* tolling is a form of equitable – not statutory – tolling.  *CalPERS*, 582 U.S. at 509–10; *see also Kelly*, 171 Fed. Cl. at 561 (citing *Bright*, 603 F.3d at 1279–

---

tolling?"

Defendant's Counsel: "[W]e have not seen that done by any court in any jurisdiction. . . . There's no traditional versus, I don't know, modern forms of equitable tolling. There's no dichotomy between them. Equitable tolling is equitable tolling. And none of it can apply to 2501."

OA Tr. at 80:1–81:4.

80) ("Essential to *Bright's* analysis is the presumption that *American Pipe* tolling is a statutory rule"). Notably, in holding that *American Pipe* tolling was statutory, not equitable, *Bright* itself also made clear that equitable tolling is barred under section 2501. *Bright*, 603 F.3d at 1287 ("In our view, the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred. The two concepts are different."); *see also Kelly*, 171 Fed. Cl. at 561 (quoting *Bright*, 603 F.3d at 1287) ("[*Bright*] was careful to differentiate between statutory tolling and equitable tolling, clarifying that it was addressing only 'whether section 2501's limitations period is *non-equitably tolled* [that is, statutorily tolled] for putative members under RCFC 23.'") (emphasis added)). With this background in mind, *Bright's* positive recitation of *Barbieri* is irreconcilable with intervening Supreme Court precedent holding *American Pipe* tolling is equitable in nature, and relevant Federal Circuit precedent unequivocally barring equitable tolling under the Tucker Act's statute of limitations. *CalPERS*, 582 U.S. at 509–10; *Young*, 529 F.3d at 1384 (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34); *Reoforce, Inc.*, 853 F.3d at 1264.

Moreover, Plaintiffs also attempt to distinguish *CalPERS* from this action by noting that *CalPERS* discussed a statute of repose, not a statute of limitations. Pls. Resp. at 21–24. Indeed, the statute at issue in *CalPERS* was a three-year limitation period for class action claims under the Securities Act, which the Supreme Court instead found to be a statute of repose, not a statute of limitations, and therefore not susceptible to equitable tolling.[27] *Id.* at 10. This distinction,

---

[27] In *CalPERS*, the Supreme Court explained the difference between a statute of limitations and statute of repose:

> [S]tatutory time bars can be divided into two categories: statutes of limitations and statutes of repose. Both "are mechanisms used to limit the temporal extent or duration of liability for tortious acts," but "each has a distinct purpose."

> Statutes of limitations are designed to encourage plaintiffs "to pursue diligent

however, misses the point and fails to recognize the jurisdictional nature of this Court's statute of limitations.

The Supreme Court has provided clear guidance on the difference between non-jurisdictional and jurisdictional statutes of limitations.  The "usual rule" is that statutory time bars carry a "rebuttable presumption of equitable tolling."  *Wong*, 575 U.S. at 408 (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)).  One way to rebut this presumption "is to show that Congress made the time bar at issue jurisdictional."  *Id.*  This jurisdictional status forecloses the availability of equitable tolling, because:

> [When] Congress made the time bar at issue jurisdictional . . . a litigant's failure to comply with the bar deprives a court of all authority to hear a case.  Hence, a court must enforce the limitation even if the other party has waived any timeliness objection. See *Gonzalez v. Thaler,* 565 U.S. 132 (2012).  And, more crucially here, a court must do so even if equitable considerations would support extending the prescribed time period.  *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133–134 (2008).  Given those harsh consequences, the Government must clear a high bar to establish that a statute of limitations is jurisdictional . . . and so prohibit a court from tolling it.

*Id.* at 408–10.  The Supreme Court recently reaffirmed the consequences of a jurisdictional time bar in *Boechler, P.C. v. Comm'r of Internal Revenue*, explaining "[j]urisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and, as relevant to this case, do

---

> prosecution of known claims."  In accord with that objective, limitations periods begin to run "when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief."
>
> In contrast, statutes of repose are enacted to give more explicit and certain protection to defendants. These statutes "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  For this reason, statutes of repose begin to run on "the date of the last culpable act or omission of the defendant."

*CalPERS*, 582 U.S. at 504–05 (internal citations omitted).

not allow for equitable exceptions." 596 U.S. 199, 203 (2022) (citing *Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)).

Relatedly, the Supreme Court has also explained that neither statutes of repose nor jurisdictional statutes of limitations allow for equitable tolling. *CalPERS*, 582 U.S. at 508 ("[T]he Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling."); *Boechler*, 596 U.S. at 203 (explaining jurisdictional statutes of limitation are not subject equitable tolling); *Wong*, 575 U.S. at 408–10 (same). There is no question that section 2501 is a jurisdictional statute of limitations. *John R. Sand & Gravel Co.*, 552 U.S. at 134. Moreover, in *CalPERS*, Plaintiff sought to invoke *American Pipe* tolling to preserve its claim. *CalPERS*, 582 U.S. at 508. Thus, dispositive to the Court's holding in *CalPERS* was whether *American Pipe* tolling was a form of equitable tolling. The Court concluded it was, and accordingly, held that *American Pipe* tolling could not alter the unconditional nature of the statutory time bar at issue. *Id*. at 508–09 ("If . . . the tolling decision in *American Pipe* [is] derived from equity principles, it cannot alter the unconditional language and purpose of the 3–year statute of repose . . . . As this discussion indicates, the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions."). Thus, relevant to the resolution of the present Motion is undoubtedly the Supreme Court's holding that *American Pipe* tolling is equitable in nature, not whether the 3-year statutory bar was a statute of repose or statute of limitations. *See* Def. Reply at 12 (internal citation omitted) ("Plaintiffs are correct, of course, that *CalPERS* addressed the availability of *American Pipe* tolling to claims governed by statutes of repose, rather than claims governed by statutes of limitations. But this is a distinction without a difference where, as here, the statute of limitations is a jurisdictional provision that categorically forbids equitable tolling."). For this reason, Plaintiffs' attempt to shift the argument

and characterize the analysis as requiring the Court to conclude section 2501 is a statute of repose, not a statute of limitations, is both incorrect and ineffective.  Pls. Resp. at 10.

    **b.**  **Defendant's Interpretation is Correct under Binding Precedent**

    Defendant argues that three principles from the Supreme Court lead to the inevitable conclusion that section 2501 is not subject to equitable tolling under *American Pipe*, and consequently, that Plaintiffs' claims are untimely:

> Number one, the Supreme Court has unequivocally held that Section 2501 is a jurisdictional statute of limitations. The Supreme Court said so clearly and unambiguously in *John R. Sand & Gravel*.

> Number two, the Supreme Court has held unequivocally that jurisdictional statutes of limitations are not subject to equitable tolling. It said so in *John R. Sand & Gravel*, and it has reiterated that principle in the year since. It said so in *Kwai Fun Wong* and in the *Boechler v. Commissioner* case just two terms ago . . . .

> Number three, [in *CalPERS*], the Supreme Court has unequivocally held that *American Pip*e tolling -- class action tolling under *American Pipe & Construction Company v. Utah* is a form of equitable tolling. It's not statutory; it's not rules-based. It is simply equitable tolling.

OA Tr. at 8:3–21.  A review of relevant jurisprudence reflects that each of Defendant's above statements are accurate.  *See supra* Discussion, Section II.  Moreover, in addition to Supreme Court precedent, Defendant points to Federal Circuit precedent unequivocally holding that section 2501 is not subject to equitable tolling.  *See, e.g.*, *id.*; Def. Reply at 13 ("Allowing plaintiffs to equitably toll 28 U.S.C. § 2501 would directly contradict binding Supreme Court and Federal Circuit precedents.").  In other words, Defendant argues that in light of the relevant binding authorities, there is simply no path forward in which this Court can hold that section 2501 is amenable to class action tolling under *American Pipe*.  This Court agrees.

    **B.**  **The Court of Federal Claims Must Follow Intervening Supreme Court Precedent**

    In addition to the merits disputes addressed above, the parties also dispute whether the

Court of Federal Claims has authority to determine that *American Pipe* tolling is inapplicable to the Tucker Act's statute of limitations, 28 U.S.C. § 2501.  In their briefs, Plaintiffs contend that "in any event, this Court remains bound by *Bright* unless and until the Federal Circuit chooses to revisit that precedent."  Pls. Resp. at 7.  Defendant disagrees, arguing that, "[b]y holding that *American Pipe* tolling is a form of equitable tolling, the Supreme Court's intervening decision in *CalPERS* is inherently irreconcilable with the Federal Circuit's contrary conclusion in *Bright*," and accordingly, "[t]he Court must now follow *CalPERS*, without regard for the Federal Circuit's pre-*CalPERS* interpretation of *American Pipe*."  Def. Reply at 15.

Ordinarily, it is without question that "a trial court may not disregard its reviewing court's precedent."  *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (2005) (citing *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005)).  An exception exists, however, where "the circuit's precedent is expressly overruled by . . . a subsequent Supreme Court decision."  *Id.* (citing *Bankers Tr. N.Y. Corp. v. United States*, 225 F.3d 1368, 1372 (Fed. Cir. 2000)).  Moreover, the Federal Circuit has explained that "the issues decided by the higher court need not be identical to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Troy*, 758 F.3d at 1326 (quoting *Miller*, 335 F.3d at 900).  And, "lower courts are 'bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'" *Id.* (citing *Miller*, 335 F.3d at 900 (citing Antonin Scalia, *The Rule of Law as the Law of Rules*, 56 U. CHI. L. REV. 1175, 1177 (1989))); *see also United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) ("[W]e are an intermediate court within the federal system, and as such, we must take our cue from the Supreme Court. . . .  Setting [a prior panel's] holding aside for a moment, in our estimation the case's *reasoning* has been fatally undercut by the Supreme Court.") (emphasis in original)).

This same rule "must be true for a trial court looking at Federal Circuit and Supreme Court authority that interact in the same way." *Kelly*, 171 Fed. Cl. at 561 n.3.  Indeed, the Federal Circuit in *Troy* adopted the Ninth Circuit's approach in *Miller v. Gammie* in holding that a prior panel precedent was no longer viable in light of intervening Supreme Court precedent.  *Troy*, 758 F.3d at 1326 (citing *Miller*, 335 F.3d at 899) ("It is established that a later panel can recognize that the court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority.").  Thus, although *Troy* determined a panel could overrule a prior panel, its explanation also makes clear that this Court must do the same should it determine *Bright* and its foundational underpinning is no longer viable after the Supreme Court's decision in *CalPERS*.  In fact, the Ninth Circuit's *Miller* holding encompassed district courts as well.  *Miller*, 335 F.3d at 899 (considering "when, if ever, a district court or a three-judge panel is free to reexamine the holding of a prior panel in light of an inconsistent decision by a court of last resort on a closely related, but not identical issue").  The Ninth Circuit's guidance is similarly clear:

> We hold that the issues decided by the higher court **need not be identical** in order to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are **clearly irreconcilable**.

> The present case is an example where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . .  In future cases of such clear irreconcilability, a three-judge panel of this court **and district courts** should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.

*Id.* at 900 (emphasis added).

The Federal Circuit itself has applied these same principles in several cases since the Federal Circuit in *Troy* adopted the Ninth Circuit's approach in *Miller*.  For example, in *California Institute of Technology v. Broadcom Ltd.*, the Federal Circuit held that a panel has the authority to overrule a prior Federal Circuit opinion without en banc action when the reasoning of that opinion

is later rejected by the Supreme Court.  25 F.4th 976, 991 (Fed. Cir. 2022).  In *California Institute of Technology*, a Supreme Court case implicitly overruled prior Federal Circuit precedent where the Federal Circuit holding had rested on an assumption that the Supreme Court later rejected:

> The panel here has the authority to overrule [the Federal Circuit opinion] *Shaw* in light of [the Supreme Court's decision in] *SAS*, without en banc action.  To be sure, *SAS* did not explicitly overrule *Shaw* or address the scope of statutory estoppel under § 315(e)(2).  But the reasoning of *Shaw* rests on the assumption that the Board need not institute on all grounds, an assumption that *SAS* rejected.  Even in the Ninth Circuit, which has one of the stricter approaches to panel overruling, *see* Henry J. Dickman, *Conflicts of Precedent*, 106 Va. L. Rev. 1345, 1350–51 (2020), "the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  We approved that higher standard in *Troy v. Samson Manufacturing Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014), and conclude that that standard is satisfied in this case.

*Id.*  In fact, the Federal Circuit in *California Institute of Technology* describes *Miller* as having "one of the stricter approaches," in this regard.  *Id.*  Yet even under that strict approach, the Ninth Circuit still directed district courts to recognize implicit overruling by subsequent Supreme Court decisions.  *Miller*, 335 F.3d at 900 ("The present case is an example where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority. . . . In future cases of such clear irreconcilability, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.").

Moreover, recently in *Ideker Farms, Inc. v. United States*, the Federal Circuit stated this overruling principle remains true even if the Supreme Court does not reference the Federal Circuit precedent at issue, noting its reasoning, as is the case here, can still be "fatally undermined":

> The Government argues [Federal Circuit precedent] *Barnes* is still good law because [the Supreme Court in] *Arkansas Game & Fish II* never mentioned *Barnes* nor answered whether damages occurring during stabilization are compensable.

42

> While the Government is correct *Arkansas Game & Fish II* did not expressly cite *Barnes*, it nevertheless fatally undermined *Barnes*' rationale. Precedent is not ironclad until the Supreme Court explicitly says otherwise—"It is established that a later panel can recognize that the court's earlier decision has been *implicitly* overruled as inconsistent with intervening Supreme Court authority." *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) (emphasis added).

71 F.4th 964, 988 n.11 (Fed. Cir. 2023) (select internal citations omitted); *see also ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1372–73 (Fed. Cir. 2023).

Additionally, in *Lone Star Silicon Innovations LLC*, the Federal Circuit overruled a prior panel decision relying on its prior statements in *Troy* regarding implicit overruling:

> Where intervening Supreme Court precedent makes clear that our earlier decisions mischaracterized the effects of § 281, we are bound to follow that precedent rather than our own prior panel decisions. *Cf. Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) ("It is established that a later panel can recognize that the court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority.").

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019).

In their briefs, Plaintiffs primarily cite to two cases for support in arguing that neither this Court nor another Federal Circuit panel could disregard *Bright*. Pls. Resp. at 9 (citing *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014); *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2021-2348, 2023 WL 328228 (Fed. Cir. Jan. 20, 2023), *reh'g en banc granted, opinion vacated*, 71 F.4th 1383 (Fed. Cir. 2023), *aff'd in part, vacated in part*, 102 F.4th 1280 (Fed. Cir. 2024)).[28]

The Federal Circuit's opinion in *Deckers Corp.* stands for the proposition that panels are bound by prior panels unless overruled en banc or by intervening Supreme Court decisions. 752 F.3d at 964 (internal citations omitted) ("We have also adopted the rule that a panel of this court—

---

[28] The Federal Circuit heard Oral Argument en banc on February 5, 2024. *See LKQ Corp. v. GM Glob. Tech. Operations LLC*, Case No. 21-cv-2348. Thereafter, the Federal Circuit affirmed in part and vacated the decision in part.

which normally sits in panels of three, and not en banc—is bound by the precedential decisions of

prior panels unless and until overruled by an intervening Supreme Court or en banc decision.  Thus,

we as a panel are bound by prior CCPA[29] decisions unless and until those CCPA decisions are

overturned en banc or through Supreme Court intervention, just as we are bound by other panel

decisions of this court.").  More recently, the Federal Circuit referenced *Deckers Corp.* in *LKQ*

*Corp.*, to which Plaintiffs also cite.  *LKQ* explained:

> We, as a panel, cannot overrule [Federal Circuit precedent] *Rosen* or *Durling*
> without a clear directive from the Supreme Court.  *Deckers Corp. v. United States*,
> 752 F.3d 949, 965 (Fed. Cir. 2016) (explaining panels are "bound by prior panel
> decisions until they are overruled by the court en banc or the Supreme Court").  *See*
> *also California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 990–91 (Fed. Cir.
> 2022)[30] (explaining the panel only had authority to overrule circuit precedent
> without en banc action given the Supreme Court's reasoning undermining said
> circuit precedent).

*LKQ Corp.*, 2023 WL 328228, at *6.

Thus, *Decker Corp.* and the per curium decision in *LKQ* do not actually support Plaintiffs'

argument that the Supreme Court need explicitly overrule *Bright*.[31]  In fact, the logic in Plaintiffs'

---

[29] The Federal Circuit has explained "[i]n our first published opinion, sitting en banc, we adopted
the case law of the CCPA as our binding precedent."  *Deckers Corp*., 752 F.3d at 964 (citing *South
Corp. v. United States,* 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc)).

[30] *California Inst. Of Tech.* relies on *Troy v. Samson Mfg. Corp.*  25 F.4th at 990–91 (citing *Troy*,
758 F.3d at 1326).

[31] Moreover, Judge Stark's concurrence in *LKQ* also serves as useful guidance:

> I believe the Board—like a district court or a panel of our court—has the power,
> indeed an obligation, to recognize when the Supreme Court has overruled
> previously binding precedent, and in such an instance (which is likely to be
> exceedingly rare) all of us are bound to follow the Supreme Court, not the overruled
> circuit court caselaw.  *See Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir. 1986) ("The
> separation of powers doctrine requires administrative agencies to follow the law of
> the circuit whose courts have jurisdiction over the cause of action. In the absence
> of a controlling decision by the Supreme Court, the respective courts of appeals
> express the law of the circuit.").

argument quickly runs out.  Plaintiffs contend that this Court must religiously follow *Bright* regardless, because they contend, incorrectly, a Federal Circuit panel would also have to blindly follow its own precedent.  Pls. Resp. at 9.  But as the Federal Circuit makes clear in the above cited case law and *LKQ,* a Federal Circuit panel can overrule a prior panel in the wake of Supreme Court precedent, and specifically provides a panel may do so when the "Supreme Court's reasoning undermin[es] said circuit precedent."  *LKQ Corp.*, 2023 WL 328228, at *6 (citing *Cal. Inst. Of Tech.*, 25 F.4th at 990–91); *see also CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023).  This may occur when a Federal Circuit's panel decision "has been *implicitly* overruled as inconsistent with intervening Supreme Court authority."  *Troy*, 758 F.3d at 1326 (emphasis added).  And this remains true whether or not the Supreme Court explicitly cites the Federal Circuit case at issue, as it may "nevertheless fatally undermine[]" the Federal Circuit panel's "rationale." *Ideker Farms, Inc.*, 71 F.4th at 988 n.11.

Relatedly, Plaintiffs also argue that vertical *stare decisis* mandates this Court to follow *Bright* unless the Federal Circuit chooses to overturn it en banc.  Pls. Resp. Authority at 2. Plaintiffs further assert that under horizontal *stare decisis*, even the Federal Circuit itself could not overrule *Bright* without en banc action.  However, this principle of horizontal *stare decisis* has no bearing on the issue now before the Court.  Defendant addressed this point of confusion at Oral Argument:

> Defendant's Counsel: There is a difference between vertical and horizontal *stare decisis*.  That difference does not apply here.  Horizontal *stare decisis* is when there

---

> If [the Supreme Court in] *KSR* truly overruled [the Federal Circuit's decision in] *Durling*, **expressly or implicitly**, then the Board was bound to follow *KSR* as controlling Supreme Court precedent regardless of what our decisions said.

*Id.* at *12 (emphasis added).  Although Judge Stark's concurrence discusses a decision before an administrative agency, his statement is express that a district court must do the same when confronted with this rare circumstance.

is a Federal Circuit precedent and, at a later date, the Federal Circuit decides to reconsider that existing Federal Circuit precedent. That's horizontal. There is no higher court involved in that scenario. And, certainly, to do that, the Federal Circuit would have to sit en banc to overrule a prior Federal Circuit decision.

That's not the case when there is an intervening Supreme Court case, which is a higher court, that implicitly overrules or directly overrules an existing Circuit precedent. If that is the case, then that rule does not apply. *Troy* makes clear and as we cited subsequent cases applying *Troy* make clear, the Federal Circuit does not have to sit en banc. A panel of the Federal Circuit can decide that an intervening Supreme Court decision has implicitly overruled what the Federal Circuit has previously said.

And that same rule applies here . . . . The Supreme Court, just as it is a superior court to the Federal Circuit, is also a superior court to this Court. And, so, this Court must follow Supreme Court precedent as well. I think the disconnect between our point and the Plaintiffs' point is that they seem to think overruling has to be direct. In other words, there has to be a case that goes up from the Federal Circuit to the Supreme Court and the Supreme Court directly overrules it. And I think the case law is fairly clear that that's not the only way to overrule Circuit precedent. Circuit precedent can also be implicitly overruled. And when that happens, the same rule applies as if the Circuit precedent was directly overruled by the Supreme Court.

OA Tr. at 44:25–46:10. In fact, Defendant's reasoning not only clarifies the inapplicability of horizontal *stare decisis* in this action, but also demonstrates how the fundamental nature of our judicial system necessitates this outcome. Vertical *stare decisis*, in fact, instructs this Court to follow the binding precedent of the Supreme Court.

After reviewing the parties' arguments, the Court finds that it has a duty to follow intervening Supreme Court precedent. *See Troy*, 758 F.3d at 1326. The Federal Circuit has clearly held on multiple occasions that a prior Federal Circuit panel decision is no longer viable in light of intervening Supreme Court precedent, even where the issues are not identical, but where the cases and their reasoning are clearly irreconcilable. *Id.* (quoting *Miller*, 335 F.3d at 900); *Cal. Inst. of Tech.*, 25 F.4th at 991; *Ideker Farms, Inc.*, 71 F.4th at 988 n.11; *ECC Int'l Constructors, LLC*, 79 F.4th at 1372–73; *Lone Star Silicon Innovations LLC*, 925 F.3d at 1235. That is the

46

precise situation here; as noted, the Supreme Court's *CalPERS* decision struck a fatal blow to *Bright's* reasoning at it relates to tolling under section 2501. The very nature of our judicial system requires trial courts to be bound by the same intervening precedent and certainly by Supreme Court precedent. *See Kelly*, 171 Fed. Cl. at 561, 561 n.3 (assessing case law regarding *Bright* and *CalPERS* and reaching the same conclusion as this Court that in light of *CalPERS*, section 2501 cannot be equitably tolled).[32]

As this Court holds that *American Pipe* tolling cannot toll the deadlines in 28 U.S.C. § 2501, Plaintiffs' claims are time-barred and, accordingly, this Court must dismiss Plaintiffs' actions for lack of subject matter jurisdiction.

## **CONCLUSION**

For the reasons set forth above, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 8) pursuant to Rules 12(b)(1) and 12(h)(3). The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: August 9, 2024
Washington, D.C.

---

[32] As noted and as the parties acknowledge, this Court need not reach the parties' secondary arguments regarding claim accrual as *American Pipe* tolling cannot be applied to toll the deadlines in 28 U.S.C. § 2501 as a matter of law, requiring this Court to grant Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) regardless of the parties' claim accrual contentions. *See* OA Tr. 7:16–24; *id.* at 39:8–40:1; *id.* at 52:6–8; *see also* Pls. Resp. at 26.